UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 26-cv-80279-Cannon/McCabe

NORMAN LLOYD,

Plaintiff,

v.

CHRISTOPHER THOMAS, et al.,

Defendants.

_____________________________________/

**REPORT & RECOMMENDATION**

THIS CAUSE comes before the Court on the following motions:

- Defendants' Joint Partial Motion to Dismiss Plaintiff's Second Amended Complaint (DE 38), and
- Defendant Hunter Ivey's Motion to Dismiss Plaintiff's Second Amended Complaint (DE 43).

The District Judge referred both motions to the undersigned for a Report and Recommendation. (DE 44). For the reasons set forth below, the undersigned **RECOMMENDS** that both motions be **GRANTED**.

## I. BACKGROUND

This is a pro se civil rights case against ten deputies of the Palm Beach County Sheriff's Office ("PBSO"), one first responder of Palm Beach County Fire Rescue Department ("PBCFR"), and one nurse who works for a private contractor at the Palm Beach County Jail. The case arises from a 911 call and a subsequent arrest and Baker Act episode that took place on March 29, 2022. The Court accepts the following facts as true, taken from Plaintiff's Second Amended Complaint ("SAC"). (DE 29).

**The 911 Call**

On March 29, 2022, Plaintiff called 911 after collapsing at his home. (DE 29 ¶ 13). PBCFR responded to the scene along with numerous PBSO deputies. (DE 29 ¶¶ 13-14). When PBCFR arrived, first responders attempted to enter Plaintiff's home, but Plaintiff refused entry and asked them to meet him outside his home. (DE 29 ¶ 14). Plaintiff then walked to his front lawn and laid supine on the ground. (DE 29 ¶¶ 15-16).

At that point, PBCFR Captain Thomas applied a blood pressure cuff on Plaintiff's right arm and began to apply EKG electrodes. (DE 29 ¶ 16). Another first responder attempted to prepare Plaintiff's arm for an I.V. (DE 29 ¶ 16). Plaintiff then made three attempts to rise from his supine position while Captain Thomas restrained him and shouted. (DE 29 ¶ 19). On the third attempt, Plaintiff forced himself upright, removed the blood pressure cuff and EKG electrodes, and retreated into his home. (DE 29 ¶¶ 19-20). While retreating, Plaintiff told his daughter, who was at the door to the home, to "[g]o get my gun." (DE 29 ¶ 20). PBCFR thereafter departed the scene. (DE 29 ¶ 23).

**The Front Lawn Negotiation**

At that point, PBSO Deputy Philips telephoned Plaintiff, who was still inside his home, and offered to give Plaintiff a ride to the hospital, provided that Plaintiff brought no weapons with him. (DE 29 ¶ 24). Plaintiff thereafter appeared on his front lawn and deputies patted him down for weapons. (DE 29 ¶ 26). PBSO Deputies Oroz and Jacobs then grabbed Plaintiff's arms and forced him to the ground without resistance, while Deputies Philips, Miller, and Camelo observed. (DE 29 ¶¶ 29-30). Deputies then handcuffed Plaintiff, put him in a squad car, and transported him to the emergency room after a one-hour delay. (DE 29 ¶¶ 31, 34).

**The Emergency Room**

At the emergency room, Deputy Camelo handcuffed Plaintiff to a gurney in an exposed area of the hospital. (DE 29 ¶ 35). Deputy Camelo released Plaintiff from the gurney so he could give a urine specimen and undergo a CT scan. (DE 29 ¶¶ 37-39). Doctors diagnosed Plaintiff with a kidney stone and deemed him "medically stable for jail." (DE 29 ¶ 40).

**The Palm Beach County Jail**

Deputy Camelo then transported Plaintiff to the Palm Beach County Jail where he underwent a medical screening by Nurse Ivey. (DE 29 ¶ 44). Nurse Ivey asked Plaintiff to wear a mask during the screening, but Plaintiff refused to do so, citing religious reasons. (DE 29 ¶¶ 45-46, 49). Nurse Ivey threatened to Baker Act Plaintiff unless he wore a mask. (DE 29 ¶ 45). When Plaintiff continued to refuse, Nurse Ivey announced that Plaintiff was "Bakered." (DE 29 ¶ 49). Nurse Ivey failed to advise Plaintiff of his rights under the Baker Act or his right to counsel. (DE 29 ¶ 50). Deputy Camelo likewise failed to inform Plaintiff of his rights under the Baker Act. (DE 29 ¶ 54).

At this point, Deputy Fuentes "took over the Baker Act case" and asserted that Plaintiff met the criteria for Baker Act commitment. (DE 29 ¶¶ 56, 59). Deputy Fuentes likewise failed to inform Plaintiff of his rights under the Baker Act. (DE 29 ¶ 58).

Deputies then moved Plaintiff into a quarantine cell and ordered him to stand with his nose facing a wall that was covered with dried blood, vomit, urine, feces, and mold. (DE 29 ¶ 65). When Plaintiff refused to comply with this instruction, several deputies took Plaintiff to the ground and stripped him of his clothing, leaving him naked in the cell. (DE 29 ¶ 66). Deputy Lawrence also struck Plaintiff while handcuffed as other deputies observed and failed to intervene. (DE 29 ¶ 111). Plaintiff requested writing implements for taking notes but was denied due to alleged suicidal ideation. (DE 29 ¶ 67).

**The Temporary Risk Protection Order**

On the morning of March 30, 2022 – while Plaintiff was still in custody – Deputy Fuentes petitioned for an ex parte Temporary Risk Protection Order. (DE 29 ¶ 74). Deputy Fuentes also filed a Baker Act petition to prolong Plaintiff's incarceration. (DE 29 ¶ 74). The police reports and sworn statements filed in support of the Baker Act petition contained numerous false statements as well as omissions of material information helpful to Plaintiff. (DE 29 ¶ 75).

Deputy Fuentes thereafter visited Plaintiff in the Palm Beach County jail and showed him the Temporary Risk Protection Order. (DE 29 ¶ 77). Deputy Fuentes pressured Plaintiff to consent to search his home for weapons. (DE 29 ¶ 78). After obtaining an audio recorded, coerced consent, Deputy Fuentes went to Plaintiff's home and confiscated the family's lawfully owned guns. (DE 29 ¶¶ 78-79).

**The Initial Appearance**

On March 30, 2022, Deputy Wheeler attempted to escort Plaintiff out of his cell to attend an in-house initial appearance. (DE 29 ¶ 81). Deputy Wheeler required Plaintiff to wear a mask, which Plaintiff refused to do for religious reasons. (DE 29 ¶¶ 81-82). As a result, Deputy Wheeler falsified paperwork, indicating that Plaintiff had refused to make his court appearance. (DE 29 ¶ 85). Ultimately, Plaintiff made an initial appearance the following day on March 31, 2022. (DE 29 ¶ 86).

**The Final Risk Protection Order**

On April 14, 2022, a state court judge issued a Final Risk Protection Order after holding a hearing. (DE 29 ¶ 92). The order cited "acts or threats of violence against himself" as a basis, despite a factual record establishing that Plaintiff engaged in self-protection and self-preservation and that no credible evidence of suicidal ideation or self-harm was reported. (DE 29 ¶ 93). The state court later

agreed to vacate the order early, contingent upon Plaintiff undergoing a second, favorable psychiatric evaluation. (DE 29 ¶ 98).

On December 13, 2022, Plaintiff went to trial on charges of resisting without violence. (DE 29 ¶ 96). The jury acquitted Plaintiff. (DE 29 ¶ 96).

Based on these facts, the SAC alleges the following counts:

| Count | Cause of Action | Defendants |
|---|---|---|
| I | Excessive Use of Force in Violation of 42 U.S.C. § 1983 | Captain Thomas, Deputies Philips, Camelo, Miller, Oroz, Jacobs, Lawrence, Hayes, and Williams, in their individual and official capacities |
| II | False Arrest/Imprisonment in Violation of 42 U.S.C. § 1983 | Deputies Philips, Fuentes, Camelo, Oroz, Jacobs, and Wheeler, in their individual and official capacities |
| III | Deliberate Indifference to Serious Medical Needs in Violation of 42 U.S.C. § 1983 | Captain Thomas and Deputies Philips and Camelo, in their individual and official capacities; Nurse Ivey, in her individual capacity only |
| IV | Retaliation for Religious Exercise & Free Speech in Violation of 42 U.S.C. § 1983 | Deputies Philips, Camelo, Fuentes, in their individual and official capacities; Nurse Ivey, in her individual capacity only |
| V | Violation of Privacy Rights in Violation of 42 U.S.C. § 1983 | Deputy Fuentes, in his individual and official capacities |
| VI | Violation of the Baker Act | Deputies Camelo and Fuentes, in their individual and official capacities; Nurse Ivey, in her individual capacity only |
| VII | Common Law Assault | Captain Thomas, Deputies Hayes and Williams, in their individual and official capacities |
| VIII | Common Law Battery | Captain Thomas, and Deputies Oroz, Jacobs, Lawrence, Hayes, and Williams, in their individual and official capacities |

| | | |
|---|---|---|
| IX | Common Law False Imprisonment | Captain Thomas and Deputies Philips, Fuentes, Camelo, and Wheeler, in their individual and official capacities |
| X | Common Law Negligent Infliction of Emotional Distress | Captain Thomas and Deputies Philips, Fuentes, Camelo, Lawrence, Hayes, and Williams, in their individual and official capacities; Nurse Ivey, in her individual capacity only |

(DE 29).

## II. LEGAL STANDARD

By way of this motion, Defendants seek dismissal of numerous claims against them pursuant to Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

As a general rule, courts hold pro se pleadings to a "less stringent standard than pleadings drafted by attorneys." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). Nonetheless, courts have no obligation to "re-write" a pro se complaint to find a claim. *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993). When it appears that no

construction of the factual allegations will support the cause of action, a court should order dismissal of the complaint. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## III. DISCUSSION

Defendants move to dismiss most of the claims in the SAC.[1] The Court will address the claims in logical order below.

### A. Claims Under 42 U.S.C. § 1983

Counts I through V allege claims for violations of Plaintiff's constitutional rights. The Court construes these counts to allege violations of 42 U.S.C. § 1983, which provides a remedy against "every person" who, under color of state law, deprives another of rights secured by the Constitution and laws of the United States. To state a § 1983 claim, a plaintiff must allege facts that show (1) a violation of a constitutional right, (2) committed by a person acting under color of state law. *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005).

Here, Counts I through V allege claims against the various Defendants in both their individual and official capacities. As to the official-capacity claims, Plaintiff concedes he did not plead these claims properly and that they should be dismissed. (DE 49 at 3). As such, the Court dismisses all § 1983 official-capacity claims.

[1] The joint motion seeks only partial dismissal as to Deputies Camelo, Fuentes, and Lawrence, who filed separate partial answers. (DE 38 at 1 n.1, DE 39–41). Specifically, Deputy Camelo answered the portion of Count I alleging that he failed to intervene in Deputy Lawrence's use of excessive force in the jail screening room. (DE 39 at 3 n.2). Deputy Lawrence answered the excessive-force claim alleged against him in Count I, and Deputy Fuentes answered the claim asserted in Count V concerning the search and seizure of firearms. (DE 41 at 2, DE 40 at 3).

As to the individual-capacity claims, Defendants move to dismiss these counts based on the doctrine of qualified immunity, which provides "complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (cleaned up). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (cleaned up). The defense of qualified immunity may be raised and considered on a motion to dismiss. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To be eligible for qualified immunity, a defendant must first establish that he or she was performing a "discretionary function" at the time of the alleged violation of federal law. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). Here, the Court finds, based on the allegations of the SAC, that Defendants acted within their discretionary authority for purposes of qualified immunity analysis.

Once a defendant makes this showing, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *Id.* at 1264. To meet this burden, the plaintiff must satisfy a two-step test: (1) he must show the defendant committed a constitutional violation, and (2) he must show the constitutional right at issue was "clearly established" at the time of the violation. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hamilton v. City of Jackson, Ala.*, 261 F. App'x 182, 186 (11th Cir. 2008) (cleaned up). "Put another way, the defendant must have fair notice of his conduct's unconstitutionality, which derives from one

of the following sources: (1) the obvious clarity of constitutional or statutory language; (2) broad holdings or statements of principle in case law that are not tied to particularized facts; or (3) fact-specific judicial precedents that are not fairly distinguishable." *Eloy v. Guillot*, 289 F. App'x 339, 346 (11th Cir. 2008).

Here, Plaintiff argues that Defendants violated his clearly established constitutional rights in a variety of ways, each of which the Court will address in turn.

**1. Count I – Excessive Use of Force**

Count I alleges that Captain Thomas and Deputies Philips, Camelo, Miller, Oroz, Jacobs, Lawrence, Hayes, and Williams violated Plaintiff's Fourth Amendment right to be free from excessive use of force. (DE 29 ¶¶ 108-16). As a general rule, the Fourth Amendment prohibits law enforcement officers from using excessive force when making arrests or investigatory stops. *Graham v. Connor*, 490 U.S. 386, 394 (1989). An officer's use of force is "excessive" if it is "objectively [un]reasonable in light of the facts and circumstances confronting" the officer. *Id.* at 397 (cleaned up). Reasonableness must be "judged from the perspective of a reasonable officer on the scene" without the benefit of hindsight. *Id.* at 396. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* As such, the Eleventh Circuit recognizes that "the typical arrest involves some force and injury." *Garcia v. Killingsworth*, 425 F. App'x 831, 832 (11th Cir. 2011).

"The constitutional test for excessive force is necessarily fact specific." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) ("Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, we must slosh our way through the fact bound morass of reasonableness.") (cleaned up). To aid in the reasonableness analysis, the Eleventh Circuit has directed courts to consider, among other factors, (1) the severity of

the crime, (2) whether the individual posed an immediate threat to the safety of the officers or others, (3) whether the individual actively resisted arrest or attempted to evade arrest by flight, (4) the need for force to be applied, (5) the amount of force applied in light of the nature of the need, and (6) the severity of the injury. *Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1339 (11th Cir. 2020) (cleaned up). Even where not strictly necessary, an officer's use of force may still be lawful if it is de minimis. *See Nolin v. Isbell*, 207 F.3d 1253, 1256–58 (11th Cir. 2000). The Eleventh Circuit has long declined to entertain § 1983 claims of excessive force predicated upon the use of de minimis force by law enforcement. *Id.* at 1257.

Many of Plaintiff's claims involve excessive use of force against him while in pretrial custody. Such claims arise under the Fourteenth Amendment rather than the Fourth Amendment. *See Piazza v. Jefferson County, Alabama*, 923 F.3d 947, 952 (11th Cir. 2019) (noting that "[w]hile the Fourth Amendment prevents the use of excessive force during arrests, ... it is the Fourteenth Amendment that" prevents the use of excessive force against pretrial detainees). Nevertheless, courts apply a similar standard and require a pretrial detainee to show that "the force purposely or knowingly used against [a pretrial detainee] was objectively unreasonable." *Watkins v. Pinnock*, 802 F. App'x 450, 461 (11th Cir. 2020) (cleaned up) (explaining that the Fourteenth Amendment excessive-force standard resembles the Fourth Amendment standard because both examine the objective reasonableness of the officer's actions).

The Court has reviewed the allegations of Count I and finds them insufficient to overcome qualified immunity. Even when construing these allegations in a light most favorable to Plaintiff, the allegations describe, at most, a de minimis use of force by (a) Captain Thomas while attempting to render emergency medical care to Plaintiff, (b) Deputies Camelo, Philips, Oroz, Jacobs, and Miller while arresting Plaintiff in his front yard, and (c) Deputies Hayes and Williams while responding to

Plaintiff's failure to obey commands in the quarantine cell. *See Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) (reversing the denial of qualified immunity and finding de minimis force under the Fourth Amendment where police officer "force[d] [the plaintiff] down to the ground and plac[ed] him in handcuffs"); *Phillips v. City of Hanceville Alabama*, 184 F.4th 1267, 1272–73 (11th Cir. 2026) (affirming summary judgment and finding de minimis force under the Fourteenth Amendment where an officer "grabbed [the plaintiff] by the neck and forcefully walked him back to his cell" after he disregarded instructions to quiet down, stood up, and continued yelling and cursing); *Robinson v. Lambert*, 753 F. App'x 777, 780 (11th Cir. 2018) (finding that "the initial use of force in pulling Robinson from his bunk, slamming him against the wall, and placing him in a hammerlock was reasonable," given inmate's refusal to obey commands); *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (affirming summary judgment and finding de minimis force under the Fourth Amendment where police officer "grabbed [the plaintiff] by the arm, forced him to the ground, placed him in handcuffs" and "held [him] to the ground for less than one minute before he helped [him] to his feet").

The sole exception relates to Plaintiff's allegation that Deputy Lawrence struck him while handcuffed and that Deputy Camelo failed to intervene to prevent this abuse. (DE 29 ¶¶ 111, 114). As discussed, Defendants have not moved to dismiss this portion of Count I. (DE 39 at 3 n.2, DE 40, DE 41). The remainder of Count I should be dismissed.

### 2. Count II – False Arrest/Imprisonment

Count II alleges that Deputies Philips, Fuentes, Camelo, Oroz, Jacobs, and Wheeler violated Plaintiff's Fourth Amendment rights by falsely arresting and imprisoning him. (DE 29 ¶¶ 117-23). The Fourth Amendment provides, among other things, that the "right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated." U.S. Const. amend.

IV. An arrest made without a warrant and without probable cause violates the Fourth Amendment and gives rise to a claim under 42 U.S.C. § 1983. *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018). Here, Plaintiff alleges several violations of his Fourth Amendment rights, which the Court will address in chronological order below.

**i. Front Lawn Arrest**

Plaintiff first sues Deputies Philips, Camelo, Oroz, and Jacobs for their role in his arrest on the front lawn of his house. (DE 29 ¶¶ 118, 120, 121). Probable cause exists to make an arrest when law enforcement officers have facts and circumstances within their knowledge "sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009). Probable cause must be measured objectively, based on the totality of the circumstances. *Henry v. City of Mt. Dora*, No. 5:13-cv-528, 2014 WL 5823229, at *11 (M.D. Fla. Nov. 10, 2014).

To overcome qualified immunity in a false arrest case, a plaintiff must do more than merely show lack of probable cause. A plaintiff must show the arresting officer lacked "arguable probable cause" to make an arrest. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). Arguable probable cause exists where a reasonable officer in the same circumstances and possessing the same knowledge as the defendant "could have believed" that probable cause existed to make an arrest. *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). Courts apply this standard because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Id.* (cleaned up); *see also Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) (noting that qualified immunity standard is broad enough to cover mistaken judgment). Like probable cause, arguable

probable cause must be measured objectively, without regard to the officer's subjective intent or belief. *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010).

The existence of arguable probable cause in any given case "depends on the elements of the alleged crime and the operative fact pattern." *Brown*, 608 F.3d at 735. Here, the Court finds that the SAC alleges sufficient facts to show arguable probable cause to arrest Plaintiff for committing, among other offenses, aggravated assault on an emergency medical provider under Florida law. In particular, Florida law defines "assault" as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011(1). Florida law further defines "aggravated assault" to include an assault with "a deadly weapon without intent to kill." Fla. Stat. § 784.021(1)(a). When the target of an aggravated assault is an emergency medical care provider engaged in the performance of his or her duties, Florida law increases the level of the offense to a second-degree felony punishable by up to fifteen years in prison. Fla. Stat. §§ 784.07(2)(c), 775.082(3)(d).

As applied here, the SAC alleges that Plaintiff called 911 to request medical assistance. (DE 29 ¶ 13). Captain Thomas and two other members of PBCFR responded to Plaintiff's home and attempted to provide him with medical care. (DE 29 ¶ 14). Plaintiff became unhappy with the medical care provided to him on his front lawn, so he stood up and walked toward his residence while instructing his daughter to "[g]o get my gun." (DE 29 ¶ 20). At that point, PBCFR left the scene before Plaintiff could retrieve his gun, and a PBSO tactical team showed up to negotiate Plaintiff's surrender and transportation to the hospital. (DE 29 ¶¶ 22–26).

These allegations, if true, would justify probable cause to arrest Plaintiff for committing an aggravated assault on an emergency medical provider in violation of Fla. Stat. §§ 784.011(1),

784.021(1)(a), 784.07(2)(c). Put differently, the arresting Deputies could have reasonably believed that Plaintiff threatened PBCFR with a deadly weapon by instructing his daughter to retrieve his gun. The Deputies could likewise have reasonably believed that Plaintiff had an apparent ability to obtain his gun from inside his home and that Plaintiff's actions created a well-founded fear on the part of PBCFR that violence was imminent. At a bare minimum, the Deputies had arguable probable cause to support a decision to arrest Plaintiff on this basis. As such, these claims fail to overcome qualified immunity.

**ii. Baker Act Proceeding**

Plaintiff next sues Deputy Fuentes for his role in the Baker Act proceedings, including the Temporary and Final Risk Protection Orders. (DE 29 ¶ 119). Plaintiff alleges that Deputy Fuentes pursued these matters based on false and fraudulent information without conducting his own independent investigation, thereby violating Plaintiff's constitutional rights. (DE 29 ¶ 119).

In order to involuntarily commit someone for a mental health examination under the Baker Act, an officer must have "reason to believe that the person has a mental illness and because of ... her mental illness ... [t]here is a substantial likelihood that without care or treatment the person will cause serious bodily harm to ... herself or others in the near future, as evidenced by recent behavior." Fla. Stat. § 394.463(1)(b)(2). If a reasonable officer, based on the facts and circumstances presented, believes that a person meets the criteria for involuntary examination, the Baker Act authorizes the officer to take the person "into custody and deliver the person … to an appropriate … facility ... for examination." Fla. Stat. § 394.463(2)(a)(2). An officer has "arguable probable cause" to detain a person under the Baker Act if a reasonable officer, based on the facts and circumstances presented, "could have believed" that probable cause existed to invoke the Baker Act. *See Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1126 (11th Cir. 2021); *see also Bright v. Thomas*, 754 F. App'x

783, 786 (11th Cir. 2018) (noting that, to defeat qualified immunity, a plaintiff "must demonstrate that reasonable officers—possessing the same knowledge as the defendants—could not have believed that [the plaintiff] appeared to meet the criteria for involuntary examination").

Applying these standards here, the Court finds that the SAC alleges sufficient facts to show arguable probable cause for Deputy Fuentes to invoke the Baker Act. The SAC alleges that Plaintiff told his daughter to "[g]o get my gun" and that PBCFR first responders submitted sworn statements accusing Plaintiff of physically threatening Captain Thomas with a gun. (DE 29 ¶¶ 20, 75). The SAC further alleges that Deputy Fuentes relied on reports referencing paranoia and schizophrenia and that jail personnel denied Plaintiff writing implements based on alleged suicidal ideation. (DE 29 ¶¶ 59, 67). An officer may reasonably rely on information supplied by fellow officers without independently verifying every assertion. *See Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 946–47 (11th Cir. 2008). Considered together, the reports of mental illness and threatened harm could lead a reasonable officer in Deputy Fuentes's position to believe that Plaintiff met the criteria for involuntary examination. Accordingly, this claim fails to overcome qualified immunity.

**iii. Delay of Initial Appearance – Wheeler**

Plaintiff next sues Deputy Wheeler for causing a 24-hour delay in Plaintiff's initial appearance by falsely indicating in jail records that Plaintiff "refused to go to in-house court," when in fact Plaintiff refused to wear a mask for religious reasons. (DE 29 ¶ 122). The Court finds no cognizable Fourth Amendment violation based on these allegations, let alone a violation sufficient to overcome qualified immunity. Plaintiff cites no case law for the proposition that a law enforcement officer violates the Fourth Amendment by delaying a prisoner's court appearance based upon health and safety protocols such as a mandatory mask requirement. For all of the above reasons, Count II should be dismissed under the doctrine of qualified immunity.

**3. Count III – Deliberate Indifference to Serious Medical Needs**

Count III alleges that Captain Thomas and Deputies Philips and Camelo, and Nurse Ivey violated Plaintiff's Eighth Amendment rights by showing deliberate indifference to his serious medical needs. (DE 29 ¶¶ 124-29). "Technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). "However, the standards under the Fourteenth Amendment are identical to those under the Eighth." *Id.* To establish a § 1983 claim in an Eighth Amendment medical-needs case, a plaintiff must allege facts to show (1) a serious medical need, (2) the defendant's deliberate indifference to that need, and (3) causation between the indifference and the plaintiff's injury. *Rutledge v. Alabama*, 724 F. App'x 731, 735 (11th Cir. 2018). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (cleaned up). "Deliberate indifference" requires a plaintiff to allege facts showing that the defendant actually knew that his or her own conduct placed the plaintiff at substantial risk of serious harm and consciously disregarded that risk. *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024).

When a plaintiff attempts to bring an Eighth Amendment claim based on delay in receiving medical treatment, the plaintiff must show that the delay exacerbated the injury or unnecessarily prolonged the plaintiff's pain. *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1235 (11th Cir. 2010). In evaluating a delay claim, courts look to several factors including the nature of the medical need, the reason for the delay, and the effect of the delay on the prisoner's medical condition. *Goebert*, 510 F.3d at 1327. The delay must amount to more than mere negligence, as "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid

claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Here, Plaintiff alleges several violations of his Eighth/Fourteenth Amendment rights, which the Court will address in chronological order. Plaintiff first sues Captain Thomas for delaying medical transportation to the hospital by falsely accusing Plaintiff of a threat. (DE 29 ¶ 125). Plaintiff similarly sues Deputy Philips for calling a tactical team to Plaintiff's home to respond to the threat rather than providing Plaintiff with immediate transportation to the hospital to deal with his kidney stone condition. (DE 29 ¶ 126). Plaintiff likewise sues Deputy Camelo for delaying his transportation to the hospital, handcuffing him to a public gurney at the emergency room, and denying him the right to use the bathroom in privacy while at the emergency room. (DE 29 ¶ 127).

The Court finds no cognizable Eighth/Fourteenth Amendment violations based on these allegations, let alone violations that overcome qualified immunity. The SAC concedes that Plaintiff told his daughter to "[g]o get my gun." (DE 29 ¶ 20). As previously explained, the Court finds this conduct sufficient to give rise to arguable probable cause to arrest Plaintiff for aggravated assault on an emergency medical care provider under Florida law. Plaintiff cites no case law for the proposition that a state actor demonstrates deliberate indifference to serious medical needs by delaying medical transportation in order to respond to threats against emergency medical care providers. As such, Plaintiff cannot overcome qualified immunity.

Plaintiff also sues Nurse Ivey for, among other things, (1) ignoring Plaintiff's need for hydration as set forth in his hospital discharge instructions, and (2) using an infrared thermometer rather than a more accurate oral thermometer during his medical screening. (DE 29 ¶ 128). The Court finds these allegations insufficient to state a plausible claim for relief. At most, these allegations show that Nurse Ivey may have been negligent in providing follow-up kidney stone care

and in choosing thermometers. Mere negligence does not suffice to show a deliberate indifference to serious medical needs. *See Thomas v. Webb*, 39 F. App'x 255, 256 (6th Cir. 2002) (affirming summary judgment where plaintiff alleged he should have received stronger medication for his kidney stone and noting that, "[a]t most, defendants' treatment decisions could be argued to have been negligent"). For all of the above reasons, Count III should be dismissed under the doctrine of qualified immunity.

**4. Count IV – First Amendment Retaliation**

Count IV alleges that Deputies Philips, Camelo, Fuentes and Nurse Ivey violated Plaintiff's First Amendment rights by retaliating against him for religious exercise and free speech. (DE 29 ¶¶ 130-36). "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for exercising First Amendment rights. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To state a § 1983 First Amendment retaliation claim, a plaintiff must allege facts that show (1) he or she engaged in constitutionally protected speech, (2) the defendant's retaliatory conduct adversely affected that speech, and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on speech. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019). To satisfy the last element, "the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). Stated differently, a plaintiff must allege that the protected First Amendment activity was the but-for cause of the defendant's actions. *Noel v. Arias*, 460 F. Supp. 3d 1318, 1329 (S.D. Fla. 2020).

Here, Plaintiff alleges that he engaged in various forms of protected First Amendment activity, including opposing Deputy Philips' pro-Trump comments and refusing to wear a mask for religious reasons. (DE 29 ¶¶ 25, 133, 135). Plaintiff alleges that Deputies Philips, Camelo, and Fuentes and

Nurse Ivey thereafter retaliated against Plaintiff by, among other things, arresting him, filing false police reports, initiating Baker Act proceedings, and sending him to a quarantine cell. (DE 29 ¶¶ 131-35).

The Court has reviewed the allegations of Count IV and finds them insufficient to state a plausible claim for multiple reasons. As to the religious exercise claim, Plaintiff fails to identify his religion or explain how wearing a mask violates a sincerely held religious belief. *See Thomas v. Norris Sch. Dist. 160*, No. 8:22-CV-179, 2022 WL 20668245, at *6–7 (D. Neb. Nov. 23, 2022) ("Thomas does not specify or describe his religion, or how any religious belief relates to any mask requirement, in his Complaint; he merely asserts that he submitted a religious exemption, which was denied."); *Denis v. Ige*, 538 F. Supp. 3d 1063, 1076 (D. Haw. 2021) ("Denis's allegations do not permit the court to infer that the Mask Mandates place a substantial burden on the exercise of his religion. The Complaint … certainly does not describe the tenets of that religion or explain how the Mask Mandates affect any religious practice. Without more, this court cannot determine whether the Mask Mandates coerce Denis to act in a way that is contrary to his beliefs.").

More significantly, the SAC fails to allege a plausible causal connection between Plaintiff's First Amendment activity and the adverse consequences that Plaintiff suffered. As discussed, the SAC concedes that Plaintiff told his daughter to "[g]o get my gun" after becoming upset with PBCFR first responders. (DE 29 ¶ 20). This gave rise to arguable probable cause to arrest Plaintiff for aggravated assault on an emergency medical care provider under Florida law. In combination with other factors, these events also gave rise to arguable probable cause to Baker Act Plaintiff. After reviewing the SAC as a whole and construing all allegations liberally in Plaintiff's favor, the Court finds that Plaintiff fails to allege a plausible causal connection. As such, Plaintiff cannot overcome qualified immunity and Count IV should be dismissed. *See Gates*, 884 F.3d at 1298 (explaining that

arguable probable cause to arrest entitles an officer to qualified immunity from First Amendment claims stemming from the arrest).

**5. Count V – Privacy Rights**

Count V alleges that Deputy Fuentes violated Plaintiff's Fourth Amendment privacy rights by searching his home and seizing his firearms without a valid warrant or voluntary consent. (DE 29 ¶¶ 137–40). As discussed, Deputy Fuentes does not move to dismiss Count V and instead filed a partial answer to this count. (DE 40 at 3).

**B. Florida Common Law & Statutory Claims**

Counts VI through X allege various Florida common law and statutory claims on both the entity and individual levels. The Court will address the entity claims first, followed by the individual claims.

**1. Entity Claims**

Defendants move to dismiss all entity-level Florida common law and statutory claims based on the SAC's failure to allege notice in compliance with Florida's sovereign immunity statute. (DE 38 at 6). Specifically, the sovereign immunity statute provides as follows:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing; ....

Fla. Stat. § 768.28(6)(a); *see also* Fla. Stat. § 768.28(2) (defining "state agencies or subdivisions" to include "counties and municipalities").

"The purpose of the notice requirement ... is to give the appropriate public bodies an opportunity to investigate all claims." *Watts v. City of Hollywood, Florida*, No. 15-61123-CIV, 2015

WL 13567492, at *4 (S.D. Fla. Sept. 4, 2015) (cleaned up). Under the sovereign immunity statute, notice functions as a condition precedent to maintaining an action. *See* Fla. Stat. § 768.28(6)(b); *Com. Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1022 (Fla. 1979) (noting that a plaintiff must comply with this provision as a condition precedent to suing a state agency or political subdivision under Florida law).

In this case, the SAC fails to include allegations that Plaintiff complied with the statutory notice provision before bringing his entity-level claims. Plaintiff must include such allegations in order to survive dismissal. *See Wagatha v. City of Satellite Beach*, 865 So.2d 620, 622 (Fla. 5th DCA 2004) ("A plaintiff must plead compliance with the statute, although a general averment will suffice."). In his response to this motion, Plaintiff asserts that he complied with the notice provisions, and he includes dates and details of same. (DE 49 at 5). Plaintiff may well be correct that he complied with the statute, but the Court cannot consider facts outside the pleadings at the motion-to-dismiss stage. As such, Counts VI through X should be dismissed against the entity-level Defendants for failure to allege notice in compliance with Florida's sovereign immunity statute.

**2. Individual Claims**

Defendants likewise move to dismiss the individual claims under Florida's sovereign immunity statute, which imposes a heightened bar for individual liability against state and municipal employees acting within the scope of their employment. (DE 38 at 6-7). The statute provides as follows in relevant part:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, *unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property*.

Fla. Stat. § 768.28(9)(a) (emphasis added). Under this statute, a state or municipal employee cannot be held personally liable unless (1) he or she acted outside the scope of his or her employment or function, or (2) he or she acted within the scope of his or her employment or function *and* acted (a) "in bad faith," or (b) "with malicious purpose," or (c) "in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.*

To meet the "wanton and willful" standard under § 768.28(9)(a), the conduct must be "worse than gross negligence." *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. 4th DCA 2020). In addition, it must be "more reprehensible and unacceptable than mere intentional conduct." *Id.* "For conduct to be willful and wanton, it must be shown that the defendant knew, or reasonably should have known in light of the surrounding circumstances, that his conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences." *Gregory v. Miami-Dade Cnty.*, 86 F. Supp. 3d 1340, 1343 (S.D. Fla. 2015), *aff'd*, 719 F. App'x 859 (11th Cir. 2017).

With this standard in mind, the Court will address each count in turn.

**i. Count VI – Baker Act**

Count VI alleges that Deputies Camelo and Fuentes and Nurse Ivey violated the Baker Act. (DE 29 ¶¶ 141-45). This claim should be dismissed because the Baker Act, on its face, does not create a civil cause of action against those who violate the requirements of the act. *See King v. Marceno*, No. 2:24-cv-375-KCD-DNF, 2025 WL 3012682, at *3 (M.D. Fla. Oct. 28, 2025) (noting that "[t]here is no private right of action under the Baker Act"). Instead, a person who has been aggrieved by violations of the Baker Act may pursue common law remedies such as false imprisonment or other similar torts. *See Liles v. P.I.A. Medfield, Inc.*, 681 So. 2d 711, 712 (Fla. 2d DCA 1995) (noting that "[a] claim for the tort of false imprisonment can be asserted based on

allegations that a person was involuntarily held without compliance with the Baker Act"). As such, Count VI should be dismissed.

**ii. Count VII – Assault**

Count VII alleges common law assault against Captain Thomas and Deputies Hayes and Williams. (DE 29 ¶¶ 146-49). Florida law defines the tort of assault as "any intentional, unlawful offer of corporeal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Colony Ins. Co. v. Barnes*, 189 F. App'x 941, 943 (11th Cir. 2006) (citing Florida law). Assault and battery are separate and distinct legal concepts, with assault being the beginning of an act which, if consummated, constitutes battery. *Doe v. Epstein*, 611 F.Supp.2d 1339, 1343 (S.D. Fla. 2009).

Here, Plaintiff alleges that Captain Thomas assaulted him by shouting in his face, demanding that he lie on hard concrete, and restraining him on the lawn while attempting to render emergency services. (DE 29 ¶ 147). Plaintiff alleges that Deputies Hayes and Williams assaulted him by forcibly taking him to the ground in the quarantine cell after he failed to follow instructions and forcibly removing his clothing, leaving him naked. (DE 29 ¶ 148).

The Court has reviewed the allegations of Count VII and finds them insufficient to state a plausible claim for relief. Although Plaintiff alleges apprehension of harmful contact, an intentional tort does not, by itself, establish the level of "bad faith," or "malicious purpose," or "wanton and willful disregard of human rights, safety, or property" as required by Fla. Stat. § 768.28(9)(a). As such, Count VII should be dismissed.

**iii. Count VIII – Battery**

Count VIII alleges a common law battery claim against Captain Thomas and Deputies Oroz, Jacobs, Lawrence, Hayes, and Williams. (DE 29 ¶¶ 150-55). To state a claim for common law battery under Florida law, a plaintiff must allege facts that show (1) "intent to cause a harmful or offensive contact and (2) a resulting offensive contact with the person of [another]." *Baxter v. Roberts*, 54 F.4th 1241, 1272 (11th Cir. 2022) (cleaned up) (citing Florida law). As to the first element, "[t]o establish the required intent to commit battery, the plaintiff must show that defendant exhibit[ed] a deliberate intent to injure or engage[d] in conduct ... substantially certain to result in injury." *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011) (citing Florida law).

In the context of battery claims against police officers, Florida law recognizes that police officers may need to utilize force to carry out their duties. *See City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). As such, Florida law analyzes such claims "by focusing upon whether the amount of force used was reasonable under the circumstances." *Id.* Police officers receive a presumption of good faith and may be held liable for common law battery only for clearly excessive use of force. *Id.* In this regard, Florida courts frequently analogize common law battery claims against police officers to § 1983 claims for excessive use of force. *See Sullivan v. City of Pembroke Pines*, 161 F. App'x. 906, 911 (11th Cir. 2006) (affirming summary judgment on Florida battery claim on same grounds as § 1983 excessive force claim).

Here Plaintiff alleges that Captain Thomas committed the tort of battery by restraining him on the lawn while attempting to render emergency care. (DE 29 ¶ 151). Plaintiff alleges that Deputies Oroz and Jacobs committed battery by forcibly taking him to the ground during his arrest on his front lawn. (DE 29 ¶ 152). Plaintiff alleges that Deputies Hayes and Williams committed battery by

forcibly taking Plaintiff to the ground in the quarantine cell after he failed to comply with an order and removing his clothing, thus leaving him naked. (DE 29 ¶ 154).

The Court has reviewed the allegations of Count VIII and finds them insufficient to state a plausible claim for relief for two reasons. First, Count VIII fails to allege sufficient facts to overcome the presumption of good faith afforded to police officers in Florida battery claims. Put differently, Count VIII does not allege facts that show "clearly excessive" use of force within the meaning of *Sanders*, 672 So. 2d at 46. Second, in the Court's view, the conduct described in Count VIII does not rise to the level of "bad faith," or "malicious purpose," or "wanton and willful disregard of human rights, safety, or property" as required by Fla. Stat. § 768.28(9)(a). As such, Count VIII should be dismissed.

**iv. Count IX – False Imprisonment**

Count IX alleges common law false imprisonment against Captain Thomas and Deputies Philips, Fuentes, Camelo, and Wheeler. (DE 29 ¶¶ 156-61). To state a claim for common law false imprisonment under Florida law, a plaintiff must allege facts that show (1) the unlawful detention and deprivation of liberty of a person, (2) against that person's will, (3) without legal authority or color of authority, and (4) which is unreasonable and unwarranted under the circumstances. *Mathis v. Coats*, 24 So.3d 1284, 1289 (Fla. 2d DCA 2010). "False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods of committing false imprisonment." *Id.*

Here, Plaintiff alleges that Captain Thomas falsely imprisoned him by shouting at him and holding him to the ground while attempting to administer emergency medical care on Plaintiff's front lawn. (DE 29 ¶ 157). Plaintiff alleges that Deputies Philips and Camelo falsely imprisoned him by delaying his transport to the hospital for approximately one hour. (DE 29 ¶ 158). Plaintiff alleges

that Deputy Fuentes falsely imprisoned him by petitioning the court for a Risk Protection Order based on false information. (DE 29 ¶ 159). Finally, Plaintiff alleges that Deputy Wheeler falsely imprisoned him by delaying Plaintiff's initial appearance based on a false claim that Plaintiff "refused to go to in-house court" when in fact Plaintiff was willing to go to court but simply opposed wearing a mask for religious reasons. (DE 29 ¶ 160).

The Court has reviewed the allegations of Count IX and finds them insufficient to state a plausible claim for relief for two reasons. First, as set forth in part III.B.2, the Court has already determined that the Plaintiff cannot state a plausible § 1983 claim for false arrest/imprisonment. For all of the same reasons discussed there, the Court likewise finds that Plaintiff cannot state a plausible claim for common law false imprisonment. Second, in the Court's view, the conduct described in Count IX does not rise to the level of "bad faith," or "malicious purpose," or "wanton and willful disregard of human rights, safety, or property" as required by Fla. Stat. § 768.28(9)(a). As such, Count IX should be dismissed.

**v. Count X – Negligent Infliction of Emotional Distress**

Count X alleges a common law claim for negligent infliction of emotional distress against Captain Thomas and Deputies Philips, Fuentes, Camelo, Lawrence, Hayes, and Williams, as well as Nurse Ivey. (DE 29 ¶¶ 162-67). Plaintiff concedes that Count X should be dismissed and requests leave to file a claim for intentional infliction of emotional distress. (DE 49 at 27). As such, Count X should be dismissed.

## V. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** as follows:

1. Both motions to dismiss (DE 38 and DE 43) should be **GRANTED**.

2. The SAC (DE 29) should be **DISMISSED**, apart from the portions which have already been answered (DE 39, DE 40, DE 41).

3. Given Plaintiff's pro se status, the dismissal should be **WITHOUT PREJUDICE,** and Plaintiff should be afforded a final opportunity to amend his pleading.

4. **Pending the District Judge's resolution of this Report and Recommendation, Plaintiff may only file an Amended Complaint in full compliance with Fed. R. Civ. P. 15.**

5. The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

6. **IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 28th day of September 2026.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE